GIBSON PRODUCTS COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9176. Promulgated March 28, 1947.

*George K. Holland, Esq.*, and *Clark G. Clinton, Esq.*, for the petitioner.

*J. Marvin Kelley, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: The first question to be answered in this matter is whether the petitioner may deduct in 1943 excise taxes paid in that year, but assessed on the ground of manufacture of hair oil in 1936, 1937, and 1938. The respondent contends, in accord with the deficiency notice, that the deductions should have been taken in 1936, 1937, and 1938, being amounts accruable for those years, the petitioner being upon an accrual basis of accounting. The petitioner's argument is based in effect upon *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516, the argument being made, as in that case, that the taxes had not been paid in the former years, but were contested and therefore not properly accruable in those years, so were properly deductible in the later year when paid. The respondent seeks to distinguish the *Dixie Pine Products* case under the argument that here the petitioner during 1936, 1937, and 1938 possessed all facts with respect to quantities manufactured and amount of tax due, and deliberately undertook to avoid the payment of the manufacturer's excise tax and deliberately failed to pay such tax, and that since all events fixing the amount of the tax and liability therefor occurred prior to 1943, the petitioner may not in 1943 deduct the amount paid in that year.

Evidence was presented before us by both petitioner and respondent as to whether there had in fact been manufacture of hair oil in 1936, 1937, and 1938. The evidence of each party was flatly and completely contradictory of the other, except that the petitioner's president testified as to the entire period, whereas the witness for the respondent, a manufacturing chemist, was employed by the petitioner only from March 1938 to April 1939. The point of difference between the parties was as to whether the petitioner's employees, or the employees of

petitioner's vendors of oil, placed and mixed coloring matter or perfume, or both, into such oil, and the testimony of petitioner's president, covering the entire period, was positive and emphatic that there had been no such mixing by its employees, but that it had purchased a completed product, whereas the manufacturing chemist testified that petitioner's employees had done the mixing. The petitioner's president had been convicted of a felony and served a short sentence in the Federal penitentiary at Leavenworth, as was proved in order to discredit his testimony; whereas the manufacturing chemist, as testified by the petitioner's president, had been discharged by him because of alleged irregularities in the handling of petitioner's alcohol and other products. The conviction of the petitioner's president was not upon such grounds as to cause us to feel that his credibility was altogether impugned. Considering the fact that the question of whether there was manufacture had been tried and found against the petitioner in the United States District Court for the Northern District of Texas in the suit for recovery of taxes, together with the evidence of the chemist necessarily considered only as to the period of his employment, and the evidence of petitioner's president, we feel that the fact as to whether there was or was not, manufacture of hair oil is not established in this case, and, since it seems to us that it is immaterial; no finding has been made. We have found as fact the petitioner's contention at all times that it was not manfacturing hair oil.

In our view, the *Dixie Pine Products* case does apply. The petitioner from the time that the excise tax on the alleged manufacture of oil was proposed against it continuously and consistently contended that it had not manufactured. All of the evidence leaves us with no doubt that it would have made the same contention during the years 1936, 1937, and 1938. We are not convinced by the record here that the petitioner was in bad faith in trying to escape the excise tax, and in not reporting, so far as concerns the hair oil in question. Though the shipping in of oil and the mixing of coloring matter and perfume with it would, under the records, save considerable freight charges, and if there was no manufacture by the petitioner, it would also escape excise taxes, the question is too close for us to feel convinced that the petitioner did not think it was properly saving both freight and tax. It had a right to do both, under proper circumstances. The question for us is not whether there was, or was not, manufacture, but whether there was such question or contention in that respect as to prevent proper accrual of the excise taxes. The petitioner was, in effect, in the same position as the taxpayer in the *Dixie Pine Products* case—a position of denying manufacture, and therefore denying excise tax. It could not, therefore, have accrued the amount of such tax during that period under the *Dixie Pine Products* case, the logic,

of course, being that the contention rendered the item so contingent as to be unaccruable. So here we consider that it has been established, irrespective as to whether there was in fact manufacture, a persistent attitude that there was no such manufacture, so that the petitioner would have had no right in 1936-1938 to accrue any possible tax based upon such manufacture. There is a remarkable similarity between the question as to whether there was manufacture of hair oil here and the question in the *Dixie Pine Products* case whether the petitioner there was using a nontaxable "solvent," or taxable gasoline.

The respondent does not contend that the tax was deductible in 1944 when final judgment was rendered in the petitioner's action to recover the tax paid, and in *Chestnut Securities Co.* v. *United States*, 62 Fed. Supp. 574, it was held by the Court of Claims that the taxpayer, on the accrual basis, could deduct taxes paid in 1940, although for the years 1936, 1937, and 1938, and although its suit to recover the taxes paid was not finally determined until 1942. The reason the taxes were not paid until 1940 was that the petitioner thought it was not subject to an intangible personal property tax. We conclude and hold that the petitioner properly deducted the $1,346.31 in 1943.

We next consider the question of deduction of expense of operating an airplane, amounting in 1941 to $1,318.45 and in 1942 to $475.73. As to 1942, the evidence is that the plane was owned by the petitioner's president and only one-third of the expenses charged to petitioner. Nothing indicates, and the respondent does not contend, that such apportionment is unfair, and we therefore accept it and approve the deduction of $475.73. But we think such an apportionment, between the petitioner and its president, has meaning for us in the question as to 1941. The petitioner's president was a business man with at least three businesses, and a number of stores outside of Dallas, aside from that of the petitioner. He used a plane from May 1, 1941, to fly back and forth between Dallas and these stores, and other points. Though he testified that all trips were solely on the business of the petitioner the other stores were "affiliated" with petitioner, in his words in the claim for abatement dated February 19, 1942. Under all the facts, we may not reasonably conclude that no use of the plane had to do with these other stores; and, since nothing indicates a different amount of use or different ratio of use in 1941 from that in 1942, between petitioner and its president, we think a ratio accepted by the petitioner as to 1942, when the plane belonged to the president (except about three weeks at the beginning of the year), should be considered on the same point as to 1941 expenses. The two planes were probably used for about the same purposes, by a busy business man. However, of the flights on 78 days in 1941, only 22 were made to cities where the president's individual stores were operated. The president testified that at

660

such stores he might, on flights, stop "for the corporation business—see about the merchandise and things that the corporation was selling to our own Gibson Products Company stores." We think that under *Cohan* v. *Commissioner*, 39 Fed. (2d) 540, some of the airplane expenses should be considered as being those of the petitioner. We conclude and hold that 11/78 of the 1941 expense should be allocated to the petitioner's president, on the theory that on the trips to cities where the president had his stores he attended alike to corporation and individual business. This proportion to the petitioner is less than the 1942 apportionment might indicate. The 11/78, however, applies only to those expenses after May 1, 1941, paid by the petitioner, for prior to that date we do not regard expense of operating the plane, while the petitioner was learning to fly, as expense of the petitioner. There is nothing of record to indicate any business of petitioner transacted by use of the plane during such period. Merely training the president to fly (obviously largely for personal reasons, as indicated by the use of the plane and the apportionment of expense in 1942) is not shown to be a corporation expense. *Welch* v. *Helvering*, 290 U. S. 111. Since one-third of the year 1941 had run by May 1, when the president received his pilot's license, we eliminate one-third of the $1,318.45 claimed as deduction; and, as above stated, allow the petitioner deduction for all but 11/78 of the remaining expense for 1941. The expense, so far as above allowed, is held ordinary and necessary expense of business. The respondent does not contend otherwise, and argues only as to the proper allocation.

Though depreciation on the airplane owned by the petitioner in 1941 was disallowed in the deficiency notice, at trial the parties agreed that a 25 per cent basis was reasonable, and the respondent does not contest, on brief, the petitioner's arguments on the point. It is therefore considered waived, and deduction of depreciation on that basis approved.

*Decision will be entered under Rule 50.*