HENRY A. SHERRY AND BARBARA E. SHERRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sherry v. Commissioner
Docket No. 2455-74.
United States Tax Court
T.C. Memo 1975-337; 1975 Tax Ct. Memo LEXIS 40; 34 T.C.M. (CCH) 1468; T.C.M. (RIA) 750337; November 10, 1975, Filed Henry Allan Sherry, *41 pro se. Joel V. Williamson, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: Respondent determined deficiencies in the Federal income taxes of petitioners for the taxable years 1970 and 1971 in the amounts of $413.89 and $980.64, respectively. Some adjustments have been conceded. The issues remaining for our decision are (1) whether petitioner Henry A. Sherry is entitled to a business expense deduction for the use of his private airplane in 1970 greater than the amount allowed by the respondent, and (2) whether labor expenses paid by petitioner Henry A. Sherry in 1971 to install fixtures in his law offices may be deducted as business expenses under section 162, Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated by the parties. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, [2] husband and wife, filed their joint 1970 and 1971 Federal income tax returns with the Central *42 Service Center, Covington, Kentucky. They resided in Woodsfield, Ohio, at the time they filed their petition in this proceeding. Petitioner is an attorney whose offices are located at 115 North Main Street in Woodsfield, Ohio. In 1967 petitioner purchased an airplane at a cost of $10,300 which had a useful life of eight years. He uses the airplane for both personal and business reasons. For the year 1970 he claimed an $858.37 depreciation deduction for its business use and an $812.69 deduction for current business operating expenses attributable to it. Total current operating expenses for the year, attributable to both business and personal use of the airplane, were $1,659.31. During 1970 the petitioner flew his airplane a total of 40 hours and 55 minutes. Of that time, 25 hours and 25 minutes were attributable to two trips from Barnesville, Ohio, to Ft. Myers, Florida. The first of these trips began on January 13, 1970, and ended January 21, 1970. Petitioners were accompanied on that trip by Mr. Hugh Hicks, a neighbor and business associate of Henry Sherry. *43 Petitioners stayed at Sanibel Island, a popular Florida resort area where they had vacationed previously. While there, Mr. Sherry spent part of his time investigating the possibility of establishing a banking enterprise at Sanibel Island, and the remainder of his time on recreation, such as swimming, tennis and golf. Mrs. Sherry spent the entire time vacationing. Mr. Hicks, who allegedly was traveling with petitioner for business reasons, spent some time with Mr. Sherry looking into the possibility of establishing a bank, and the remainder of his time vacationing. The second trip, on April 3, 1970, was substantially similar to the first one except for the absence of Mr. Hicks, who apparently was no longer interested in the idea of investing in a bank on Sanibel Island. On that trip the petitioners spent over 2 weeks, until April 22, 1970, at Sanibel Island, further investigating the bank idea and engaging in various recreational activities. The remainder of the flying time for 1970 was devoted to proficiency flying, flying for personal reasons, or flying for business reasons. Respondent determined that no more than 6.45 percent of petitioner's operating costs of the airplane *44 were attributable to business use, and thus only 6.45 percent of those costs are deductible as a business expense in 1970. On July 12, 1971, petitioner leased the premises at 115 North Main Street, Woodsfield, Ohio, from John A. Scully for 5 consecutive renewable 5 year periods. One provision in the lease is that the lessor (Scully), may, if he should find it practicable to use the space occupied by petitioner's law offices for banking facilities, require the petitioner to move his law offices to another location as desirable as the leased premises. Neither party has ever given notice of his intention to terminate the lease. In 1971 the petitioner made certain improvements to the building located at 115 North Main, for the purpose of converting the building, which was originally set up to be a bank, into his law offices. The improvements could be removed if the lessor gave notice to petitioner to vacate the premises. The cost ($6,002.47) of the improvements made by petitioner in 1971 consisted primarily of air conditioning and heating equipment, materials, supplies, carpeting and drapes. The useful life of the improvements is 10 years. Petitioners also incurred labor costs of $2,865 *45 incidental to making the improvements. Mr. Scully paid petitioner $336 to defray part of these labor costs. Petitioner paid the remainder. On Schedule C of their 1971 Federal income tax return the petitioners deducted the labor costs attributable to installation of the improvements as a current business expense, rather than capitalizing them and depreciating that amount over the useful life of the improvements. In his notice of deficiency respondent disallowed the claimed business expense. He determined that the labor costs should be capitalized and depreciated over the useful life of the improvements. OPINION Issue 1--Airplane Use
During 1970 the petitioner used his private airplane for both personal and business purposes. On his 1970 Federal income tax return he allocated two-thirds of his private airplane use to business purposes and one-third to personal purposes. As a result, he deducted two-thirds of his airplane's operating cost as a business expense, and depreciated two-thirds of his airplane's cost basis over an eight year useful life. Respondent contends that petitioner did not use his airplane for business purposes to any greater extent than 6.45 percent during *46 1970. It is clear that petitioner is entitled to deduct under section 162(a) the allocable portion of expenses and depreciation attributable to use of his plane related primarily to his trade or business. No deduction is allowed for operating costs and depreciation to the extent a private airplane is used for personal purposes. See section 262, which provides that no deductions shall be allowed for personal, living and family expenses, unless expressly provided for. The issue here boils down to what percentage of petitioner's total 1970 flying hours was for business use and what percentage was for personal use. As noted previously, during 1970 the petitioner's total flying hours amounted to 40 hours and 55 minutes. Respondent has conceded that 6.45 percent of his flying hours were for business purposes. Of the remaining time, 25 hours and 25 minutes, or 62 percent of the total flying hours, were devoted to two round trips by petitioners to Ft. Myers, Florida. The first trip, which began on January 13, 1970, and terminated January 21, 1970, involved petitioners and Hugh Hicks, a neighbor. During the eight days that they spent at Sanibel Island, petitioner and Mr. Hicks talked to *47 a small number of individuals about the possibility of establishing a bank there. The remainder of their time was spent vacationing. On that trip, petitioner's wife, Barbara, who also acted as his legal secretary, performed no secretarial duties for Mr. Sherry nor did she prepare any legal documents. Petitioners had visited Sanibel Island prior to their two 1970 trips and have returned there since then as vacationers. Section 1.162-2(b)(1), Income Tax Regs., provides: If a taxpayer travels to a destination and while at such destination engages in both business and personal activities, traveling expenses to and from such destination are deductible only if the trip is related primarily to the taxpayer's trade or business. If the trip is primarily personal in nature, the traveling expenses to and from the destination are not deductible even though the taxpayer engages in business activities while at such destination. Section 1.162-2(b)(2), Income Tax Regs. *48 , provides: Whether a trip is related primarily to the taxpayer's trade or business or is primarily personal in nature depends on the facts and circumstances in each case. The amount of time during the period of the trip which is spent on personal activity compared to the amount of time spent on activities directly relating to the taxpayer's trade or business is an important factor in determining whether the trip is primarily personal. (Emphasis added) Petitioner testified that he talked to at least ten individuals on Sanibel Island about the idea of establishing a bank. But he could remember the names of no more than five individuals on Sanibel Island who were consulted with respect to the matter. Petitioner kept no notes and no memoranda in any form as to these alleged conversations. There is no evidence as to the amount of time petitioner spent discussing this idea. The remainder of the trip was devoted exclusively to vacationing. In these circumstances we think the petitioner's trip was primarily personal in nature. Consequently, the operating costs and depreciation attributable to it are not deductible. The same is true of petitioner's second trip to Sanibel Island *49 on April 3, 1970, which lasted until April 22, 1970. This trip, which he says was for the purpose of following up on previous contacts, involved only Mr. and Mrs. Sherry. The amount of time spent at Sanibel Island, over two weeks, is indicative of vacationing rather than investigating business possibilities. While the testimony indicates that petitioner talked to a few persons with the idea of persuading them to invest in a banking enterprise, most of his time over this period was spent on recreation. We find that the flying hours involved in this trip were primarily for personal rather than business reasons. Even if the two Florida trips were primarily for business reasons, we still would not allow the claimed deductions because they do not qualify under the statute. Section 162(a)(2) provides: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses * * * while away from home in the pursuit of a trade or business; * * * *50 The term "trade or business" presupposes an existing trade or business. Expenditures incurred in investigating a potential new trade or business or in preparation for the possibility of entering into a new trade or business have been held not to have been incurred in connection with a trade or business so as to be deductible in computing taxable income. Stanton v. Commissioner,399 F. 2d 326 (5th Cir. 1968); George A. Dean,56 T.C. 895 (1971); and Morton Frank,20 T.C. 511 (1953). Petitioner argues that the two Florida trips were directly connected with his practice of law and sufficiently connected with his business to be considered a business use. We cannot agree. Petitioner is not in the banking business; he is a lawyer. There is a clear distinction between those two businesses. Thus, petitioner's expenses incurred in investigating potential business opportunities are nondeductible. Approximately 30 percent of petitioner's total 1970 flying hours were devoted to either proficiency flying or purely personal flying. He does not contend *51 that his expenses attributable to personal flying are deductible. He does argue, however, that 12 hours and 45 minutes, or about 22 percent of his 1970 flight time (19% according to respondent), devoted to proficiency flying should be deductible as an ordinary and necessary business expense under section 162. Petitioner's argument is that he was required to make the proficiency flights in order to continue to use his airplane for business purposes. He testified that the sole reason for purchasing the plane originally was for business use, that he does not enjoy flying, and that his lack of mechanical skill makes flying more of a chore for him than a pleasure. He also claims that his use of the airplane in relation to his business involves carrying clients on many occasions. The Federal Aviation Regulations provide that no person may act as a pilot in command of an aircraft carrying passengers unless he has made at least five take offs and five landings within the preceding 90 days. Thus, in order for petitioner to continue to use his airplane for business pruposes, he is required to make a certain number of proficiency flights during the year. Although the proficiency flights make *52 it possible for petitioner to carry passengers in his business, they also allow him to fly various friends and personal acquaintances on personal flights. For petitioner to carry members of his own family as passengers, he must make the required number of proficiency flights every 90 days. While the proficiency flights do make it possible for petitioner to carry clients on business matters, they are not necessarily for business purposes. No business is involved or transacted as a result of these flights. We conclude that these flights are personal in nature, and thus the operating costs and depreciation attributable to them are not deductible. See and compare Gibson Products Co.,8 T.C. 654, 660 (1947); John L. Beckley,T.C. Memo. 1975-37. Accordingly, we sustain respondent's determination as to the percentage of business use of the airplane. Issue 2--Labor Costs
On their joint 1971 Federal income tax return the petitioners deducted as a business expense the amount expended for labor in installing the improvements in Mr. Sherry's law offices. It is respondent's position that the wages paid by petitioner to various individuals were a cost *53 of construction of capital improvements which must be depreciated over the life of those improvements. The parties have stipulated that the improvements have a 10-year useful life. The petitioner has the burden of proving that the wages in question are deductible as a current expense rather than a capital item as determined by the respondent. Delores Bussabarger,52 T.C. 819 (1969); Challenge Manufacturing Co.,37 T.C. 650 (1962). Capital expenditures include those amounts paid or incurred to adapt property to a new or different use. Section 1.263(a)-1(b)(2), Income Tax Regs. Clearly the expenditures made by petitioner to convert the building at 115 North Main to his law offices were in the nature of capital expenditures. Section 263(a) provides that no current expense shall be allowed for capital expenditures. That section reads: (a) General Rule.--No deduction shall be allowed for-- (1) Any amount paid out for new buildings *54 or for permanent improvements or betterments made to increase the value of any property or estate. (Emphasis added) Petitioner contends that section 263 does not apply because it refers only to "permanent" improvements, and that the improvements made to his law offices were only temporary. He argues that due to * * * the readily terminable lease condition, petitioner decided that his only alternative was to expedite the installation of material which would be installed or removed quickly without doing any damage whatsoever to the leased structure. In other words, no permanent improvements were made which would benefit the property, lessor or for that matter the petitioner. The materials were designed so that they could be dismantled and reused, but at considerable expense when the need arose. Petitioner cites Fall River Gas App. Co. v. Commissioner,349 F. 2d 515 (1st Cir. 1965), for the proposition that a capital expenditure is one that secures an advantage to the taxpayer which has a life of more than one year, and that it must be something of permanent use or value in his business. He argues that, since the lessor has the right to request him to vacate *55 the premises if the lessor finds someone willing to use the building as a bank, the improvements are not permanent and the wages paid by him are not capital expenditures. Petitioner states that the nature of the installations and their lack of permanence dictate the existence of an ordinary business expense, and that there was no anticipation of a continuing economic benefit over any period of time which would be indicative of a capital expense. We disagree with the petitioner. The same argument was advanced in Fall River,supra. Fall River Gas Appliance Company was a subsidiary of Fall River Gas Company, a seller and distributor of natural gas. It made expenditures from 1957 to 1959 consisting of installation costs for leased gas appliances, primarily water heaters and conversion burners for furnaces. Installation costs for both labor and material were around $65 for a water heater and $90 for conversion burners. Appliances were leased for one year initially, and conversion burners were removable at the will of the customer upon 24 hour notice. It was anticipated that the overall duration of the leases would result in rental income upon the appliances and greater consumption *56 of gas which would benefit the taxpayer. The Court of Appeals said (349 F. 2d at 517): * * * the taxpayer took a considered risk in the installation of a facility upon the premises of another in anticipation of an economic benefit flowing from the existence of the facility over an indeterminable length of time. * * * the totality of expenditure was made in anticipation of a continuing economic benefit over a period of years and such is indicative of a capital expense. (Emphasis added) This is virtually the same situation which exists in the present case. Petitioner, by making the improvements to the building, must have believed that by doing so he would derive certain economic benefits in terms of more business, by having new clients being attracted to his new law offices situated in a much more spacious and attractive location. In fact, if petitioner had believed otherwise, he most certainly would not have expended those sums to convert the premises into his law offices. The case of Commissioner v. Idaho Power Co.,418 U.S. 1 (1974), indicates what treatment should be given to wages paid for construction of capital improvements. There *57 the taxpayer claimed a deduction from gross income under section 167(a) for all the depreciation for the year on its transportation equipment, including that portion attributable to its use in constructing capital facilities. The Supreme Court stated: There can be little question that other construction-related expense items, such as tools, materials, and wages paid construction workers, are to be treated as part of the cost of acquisition of a capital asset. The taxpayer does not dispute this. Of course, reasonable wages paid in the carrying on of a trade or business qualify as a deduction from gross income. * * * But when wages are paid in connection with the construction or acquisition of a capital asset, they must be capitalized and are then entitled to be amortized over the life of the capital asset so acquired. [418 U.S. 1, 13] (Emphasis added) The pertinent regulation is in agreement. Section 1.167(a)-4, Income Tax Regs., provides: *58 Capital expenditures made by a lessee for the erection of buildings or the construction of other permanent improvements on leased property are recoverable through allowances for depreciation or amortization. (Emphasis added) This regulation is clearly applicable in this case, where the petitioner has leased the premises upon which he has made improvements. Since those improvements are in the nature of permanent improvements, we hold that petitioner's labor costs must be capitalized over their 10-year useful life. See Jaffa v. United States,198 F. Supp. 234 (N.D. Ohio 1961). Respondent's determination is therefore sustained. To reflect the concessions made by the parties and the conclusions reached herein on the disputed issues, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
2. Henry A. Sherry and Barbara E. Sherry are referred to as "petitioners." Henry A. Sherry is referred to as "petitioner."↩