## APPEAL OF KEHOTA MINING CO.

Docket No. 1117.   Submitted June 9, 1925.   Decided February 18, 1926.

1. A corporate taxpayer organized in 1916 and engaged in coal mining operations is entitled to a deduction for depreciation of buildings and all miscellaneous equipment used in its business, computed on the basis of the cost, less salvage, if any, and spread over the estimated time of continuing mining operations in proportion to the quantity of coal produced during each accounting period.

2. Said corporate taxpayer is entitled to a depreciation deduction upon the cost of steam and electric shovel units, less salvage, computed upon the basis of the number of tons of coal which each shovel unit will remove.

3. Said corporate taxpayer is entitled to a deduction for depletion of the coal content of its lands, ascertained by dividing the cost of the lands by the final estimate of tons of coal in place at the beginning of mining operations.

*Hale Hill, Esq.,* for the taxpayer.
*B. H. Saunders, Esq.,* for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies in income and profits taxes for the year 1917 of $12,786.99, and for the year 1920 of $26,829.78, and an overassessment for the year 1918 of $16,027.16. The deficiencies result from the disallowance by the Commissioner of amounts claimed for depreciation on machinery and equipment and depletion of coal mines.

FINDINGS OF FACT.

The taxpayer is a corporation, organized in 1916 under the laws of the State of Ohio, with its principal office in the City of Pittsburgh, Pa.; and, during the years in question, was engaged in the

business of producing coal by what is commonly known as the stripping process. The coal was stripped by large steam shovels, which were used in removing the overburden of dirt and rock. After the coal was stripped, smaller electric shovels were used to remove the coal and load it in cars.

Taxpayer's coal properties consisted of three tracts of land, one located in Perry County, near Saltillo, on the New York Central Railroad; one on the Baltimore & Ohio Railroad, designated as the McCune mines; and the other, commonly known as the Baird property, on the Hocking Valley Railroad, or connected by a branch with the Hocking Valley Railroad, all in the State of Ohio.

In 1916, when these coal properties were acquired, it was estimated that the coal content was approximately 3,822,530 tons. The actual cost of the coal lands was $266,700. During the years 1918, 1919, and 1920, it became evident that the original estimate of coal was excessive, and in 1922 a new and correct estimate was made showing 3,205,958 tons of recoverable coal.

In order to market this coal, the taxpayer installed the equipment and machinery necessary to strip and mine the coal, at a total cost of $1,059,098.05 for the years 1916 to 1920, inclusive. The equipment and machinery installed consisted of electric appliances, shovels, locomotives, cars, tipples, railroad tracks, mine tracks, store rooms and offices, engine houses and shops, horses, automobiles, tools, and other miscellaneous equipment. The largest item was the steam and electric shovels, which, on December 31, 1920, amounted to $565,413.68, or a little more than one-half the total expenditures for equipment and machinery. The life of the steam and electric shovels, based on units of production, was at first estimated at 500,000 tons of merchantable strippings per shovel, but later it developed that the solidity of the overburden in places reduced the life of the shovels to about 400,000 tons of merchantable coal per shovel. The total amount expended for machinery and equipment for the years 1916 to 1920, inclusive, was as follows:

| For the year 1916 | $107,450.76 |
| For the year 1917 | 342,547.57 |
| For the year 1918 | 486,597.65 |
| For the year 1919 | 97,135.84 |
| For the year 1920 | 25,366.23 |
| Total | 1,059,098.05 |

This machinery and equipment had a life sufficient, with minor replacements, to mine out the coal contained in the mine.

Taxpayer built near the mines and owned 20 dwelling houses for use of the miners. The houses were built during the years 1917, 1918, and 1919, at a total cost of $27,178.52, apportioned as follows:

### 1917.

| | |
|---|---|
| October | $3,190.98 |
| November | 5,203.79 |
| December | 3,025.63 |

### 1918.

| | |
|---|---|
| May | 2,420.12 |
| July | 5,000.00 |
| August | 635.00 |
| September | 4,065.00 |

### 1919.

| | |
|---|---|
| January | 3,638.00 |
| Total | $27,178.52 |

The houses will have no value when the coal is exhausted. Under normal conditions, all of the coal would be mined out on or before January 1, 1932. Taxpayer took no depreciation, either on its books or in its income-tax returns, on said dwelling houses during any of the years in question, and now asks that depreciation be allowed on the basis of cost and the useful life of the buildings.

The taxpayer produced coal from these mines during the years in question as follows:

| | Tons |
|---|---|
| 1916 | 1,344 |
| 1917 | 99,749 |
| 1918 | 246,430 |
| 1919 | 255,186 |
| 1920 | 464,213 |

The taxpayer in its returns for the years 1917, 1918, 1919, and 1920, took depreciation deductions on physical properties on the basis of units of production of coal at 25 cents per ton for each ton of coal produced for each of said years. The Commissioner allowed depreciation on tonnage based on the rate of 2.8 cents per ton produced during the year 1917; 12 cents per ton produced during the year 1918; 24.3 cents per ton produced for the year 1919, and 27.3 cents per ton produced for the year 1920. The taxpayer, in its income and profits tax returns for the years involved, took a depletion deduction of 10 cents for each ton of coal produced during each year. The Commissioner reduced this rate to 7 cents for each ton of coal produced during each of said years.

### DECISION.

The deficiencies should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, in accordance with Rule 50.

104881—27——60

## OPINION.

TRUSSELL: The questions presented in this appeal are whether the taxpayer is entitled to a greater rate of depreciation on mining machinery and equipment and dwelling houses erected near the mines, less salvage, than that allowed by the Commissioner; and, also, whether taxpayer is entitled to a greater deduction for depletion of mines than that allowed by the Commissioner.

Section 234 (a) (9) of the Revenue Act of 1918 provides that taxpayers engaged in the recovery and merchandising of natural resources may have deductions from gross income due to the depletion of such resources and the wear and tear of equipment used in the business, and such provision is in the following language:

In case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted.

· The Commissioner, with the approval of the Secretary of the Treasury, for the purpose of administering this provision of law, adopted a regulation as follows (Regulations 45, art. 165):

The capital sum to be replaced should be charged off over the useful life of the property either in equal annual installments or in accordance with any other recognized trade practice, such as an apportionment of the capital sum over units of production.

The record of this appeal establishes that the taxpayer began business in 1916 with coal-bearing lands, either at that time or immediately thereafter acquired at a cost of $266,700 and having a coal tonnage in place originally estimated as 3,822,530 tons of merchantable coal. Some time later this estimate was revised. The engineer's final figures of original coal content of the lands owned by the taxpayer is 3,205,958 tons; and, for the purpose of the computation of depreciation and depletion, we have accepted the latter estimate as the amount of recoverable merchantable coal originally underlying the taxpayer's properties. Mining operations began in 1916, and the engineer's estimate established the period of continuing mining operations as ending December 31, 1931. Depreciation, therefore, of the taxpayer's equipment should be computed upon the cost of equipment used, in the light of its character and the period of operations beginning in 1916 and ending in 1931.

The equipment installed and used by the taxpayer appears, for the purposes of depreciation, to be all properly considered in two groups, in one of which should be the units of steam and electric shovels, the estimated life of which is limited to the production of not more than 500,000 tons of coal per unit of shovels, while in another group all the other miscellaneous equipment and buildings necessary to the taxpayer's business, with such additions and

replacements as the operations require, may be included and may be depreciated upon the basis of use throughout the period of mining operations.

In view of all the facts set forth in the findings, we are of the opinion: (1) That the total cost of all the miscellaneous equipment, buildings, and miners' dwellings, less estimated salvage, if any, at the completion of mining operations, should be credited with an annual depreciation deduction found as follows: To the cost of such equipment at the beginning of each year, less salvage, if any, and depreciation actually sustained on the basis of this formula, add the cost, less salvage, of additions not including replacements made during the year averaged, divide this amount by the quantity of coal in place at the beginning of the year, ascertained by deducting from 3,205,958 tons the total number of tons mined to the beginning of the taxable year, and multiply by the number of tons removed during the year; (2) that the total cost of steam and electric shovel units, less estimated salvage, if any, should be credited with depreciation deduction each year, found as follows: To the original cost, less estimated salvage, if any, add additions not including replacements made during the year, if any, divide by 500,000 tons and multiply by the number of tons of coal removed during each year by each shovel unit in use.

Depletion of coal content for each of the years under consideration should be found by dividing the cost of coal-bearing lands by 3,205,958, the estimated number of tons in place at the beginning of operations. This process will produce a depletion unit of 8.31888 cents per ton of recoverable coal.