*1148 OPINION.
Van Fossan:
The first question before us is the amount of depletion allowable on petitioner’s sand deposit. The record indicates that at the time of filing the 1919 return no proper or dependable estimate had been made of the extent of the deposit.
The facts in this case raise squarely the question whether depletion for a given year is to be based solely on facts known or estimates made at the time a return is filed or may be revised in the event of a hearing before the Board so as to comport with subsequently discovered facts. The rulings of the Board on this question are not in harmony.
In the case of Stouts Mountain Coal Co., 4 B. T. A. 1292, where the facts were somewhat similar to the instant case, we held that the subsequently discovered facts might properly be employed to revise the basis of computation of depletion for the year in which the facts were developed (1921) but no intimation was given that *1149 the revision should be retroactive, although the previous tax year (1920) was also before us.
In Sterling Coal Co., Ltd., 8 B. T. A. 549, the very issue above stated was before us and we there ruled that the right to revise should not be retroactively applied and said:
The rule contended for by tbe petitioner is that in the case of mines the rate of depletion applicable for any year is contingent upon the determination of the reserves in the ground as ascertained by the development prosecuted and carried on in subsequent years. Under this rule there would be no time until the end of the life of a mine or at least there would be an indefinite length of time before a final estimate of the recoverable coal in place could be made. The petitioner contends that unless it is given the right in this case to revise its depletion allowances for 1917, 1918, and 1919 upon an estimate of reserves made in 1922, it will not have returned to it its capital tax free. In our opinion, this contention is not sound. In the first place, a taxpayer is entitled only to a reasonable allowance for depletion, and that reasonable allowance must of necessity be computed upon the basis of factors known to exist during the year for which the return was filed. It is not in our opinion the purpose of the statute to permit taxpayers to determine their net incomes for a given year on the basis of facts developed in the future.
Under our decision in Stouts Mountain Coal Co. v. Commissioner, supra, if subsequent developments show that a material error has been made in the original estimates of the ore reserves, a new estimate may be made, and the capital remaining to be recovered distributed accordingly. This is in accordance with article 209 of Regulations 45, and in our opinion is a fair and reasonable interpretation of the statute. * * *
The Sterling Coal Co. decision specifically overruled Kehota Mining Co., 3 B. T. A. 885. See also Kehota Mining Co. v. Lewellyn; Kehota Mining Co. v. D. B. Heiner, 28 Fed. (2d) 995. The decision of the Board in Thomas Coal Co., 10 B. T. A. 639, where the question differed from the instant case only in that it involved depreciation instead of depletion, is apparently out of harmony with the reasoning of the above-cited cases. We believe the decision in Sterling Coal Co. is sound and Thomas Coal Co. is accordingly overruled.
Applying this rule to the facts of the case at bar, the record indicates that at the time of filing the 1919 return no proper or dependable estimate had been made of the extent of the said deposit. The computation made by petitioner was little more than a guess. Thus, we can not approve the computation of the respondent based on a supposed content of 1,275,000 tons. On the other hand, although the method adopted by the petitioner more nearly assures a reasonable allowance, it has employed incorrect basic figures. Applying the stipulated cost figures we arrive at a figure of approximately $1,500, which is reasonable and should be allowed as depletion in 1919.
The second issue relates to depreciation. Here we are met by inadequate proof. Petitioner’s testimony as to rates was exclusively *1150 directed to the depreciation on the shaker tables. Other items of property, however, were involved as to which no testimony was presented. Though the testimony indicates that 10 per cent was possibly a low rate for the tables, we are unable to say from the record that when averaged with other property 10 per cent was not a reasonable average or composite rate.
Reviewed by the Board.

Judgment will he entered under Buie 50.

LaNSdoN dissents.