KENNETH L. KNUDTSON AND WADENA F. KNUDTSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Knudtson v. Commissioner
Docket No. 1359-79.
United States Tax Court
T.C. Memo 1980-455; 1980 Tax Ct. Memo LEXIS 130; 41 T.C.M. (CCH) 166; T.C.M. (RIA) 80455; October 8, 1980, Filed George Constable, for the petitioners. Michael R. McMahon *132 , for the respondent. FEATHERSTON
MERORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in the amounts of $13,877.90 and $2,581.38 in petitioners' Federal income taxes for 1975 and 1976, respectively. After concessions by petitioners, the issues remaining for decision are (1) Whether the ratio of business to personal use of an airplane during 1976 may be considered in determining the amount of the investment credit for the airplane and the deductions for depreciation and operating expenses of the airplane to which petitioners are entitled for the year 1975; and (2) whether any portion of the hours that the airplane was flown during the instrument flight training of petitioner Kenneth L. Knudtson in 1975 and 1976 may be included in determining the percentage of business use of the airplane during those years. FINDINGS OF FACT Some of the facts in this case have been stipulated. Petitioners Kenneth L. Knudtson (hereinafter petitioner) and Wadena F. Knudtson, husband and wife, filed joint Federal income tax returns for 1975 and 1976 with the Internal Revenue Service Center, Ogden, Utah. At the time the petition herein *133 was filed, they resided in Redmond, Washington. During 1975 and 1976, and for a number of years prior and subsequent thereto, petitioner owned and operated Knudtson Auto Electric, a sole proprietorship engaged in the business of rebuilding automobile windshield wiper motors. In this business, maintaining a source of supply of used wiper motors to be rebuilt is more of a problem than selling the rebuilt motors. Therefore, it has been important that petitioner maintain a close association with his suppliers. In this connection, it has been necessary for petitioner to travel to the places of business of his suppliers and to the biannual conventions held by them. It has also been necessary for him to travel in connection with sales of rebuilt wiper motors. Petitioner's suppliers, for the most part consisting of automobile wrecking yards, are located throughout the United States. Most of petitioner's sales of rebuilt wiper motors are made to warehouse distributors on the West Coast of the United States. [1]/ On November 18, 1975, petitioner *134 purchased a model A-36 Beechcraft Bonanza airplane (the plane or the A-36). The plane had an estimated useful life of 7 years and cost $89,700. The purchase price included some $20,000 for special instruments to be used for flying in inclement weather. At the time that he purchased the A-36, petitioner had a private pilot's license, but he did not have an instrument rating. Between November 18, 1975, and April 13, 1976, he flew a total of 53.6 hours in the A-36 in connection with instrument flight training. On April 13, 1976, petitioner received an instrument rating on his pilot's license. Without this rating, it would have been difficult, if not impossible, for petitioner to maintain any kind of a schedule in using the plane for business purposes. [2]/ During 1975, petitioner paid an excise tax on the airplane in the amount of $4,485. In 1976, he paid $10,882.64 in operating expenses for the airplane. The parties agree that the number of hours flown by petitioner in the A-36 during the years in question can be characterized as follows: Year
Business
Personal
Maintenance [1]
Training
Total Hours
1975
1.0
3.7
0
4.7
9.4
1976
100.2
25.1
15.8
48.9
190.0
*135 On his 1975 and 1976 Federal income tax returns, petitioner claimed deductions for the depreciation and operating expenses of the A-36. In addition, on the 1975 return, he claimed an investment credit and additional first-year depreciation for the airplane. Although it is not entirely clear from the record, it appears that the investment credit and the deductions for depreciation and operating expenses were all computed without any adjustment for personal use of the airplane. [3]/ In the notice of deficiency, respondent determined that only 11 percent and 58 percent of the total hours flown in the A-36 during 1975 and 1976, respectively, were for business purposes. the remainder of the hours flown, including all hours for instrument *136 flight training, were treated as having been flown for personal purposes. To the extent that he determined that the airplane was used for personal purposes, respondent disallowed the investment credit and the deductions for additional first-year depreciation, annual depreciation, and operating expenses claimed by the petitioner for 1975 and 1976. [4]/ OPINION Section 162(a)[5]/ permits a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in *137 carrying on any trade or business." Section 167(a)(1) provides that "a reasonable allowance for the exhaustion, wear and tear * * * of property used in the trade or business" shall be allowed as a deduction for depreciation. In the case of certain tangible personal property, "the term 'reasonable allowance' as used in section 167(a) may, at the election of the taxpayer, include an allowance" for additional first-year depreciation of 20 percent of the cost of the property. Sec. 179(a). [6]
*138 Section 38 allows a tax credit for investments in certain property specified in section 48(a), including tangible personal property with respect to which a deduction for depreciation is allowable under section 167. If, for the taxable year in which property is placed in service, a deduction for depreciation is allowable to the taxpayer only with respect to a part of such property, then only the proportionate part of the property with respect to which such deduction is allowable qualifies for the purpose of determining the amount of credit allowable under section 38. Thus, for example, if property is used 80 percent of the time in a trade or business and is used 20 percent of the time for personal purposes, only 80 percent of the basis (or cost) of such property qualifies as section 38 property. Sec. 1.48-1(b)(2), Income Tax Regs. See sec. 1.46-3(d)(4)(i), Income Tax Regs. Rules for computing the credit are set forth in sections 46 through 50. It is undisputed that petitioner is entitled to deduct annual depreciation and operating expenses *139 of the airplane for each of the years in question, under sections 167 and 162, and that he is also entitled to an investment credit and to a deduction for additional first-year depreciation for 1975, under sections 38 and 179. However, respondent contends that the various deductions and investment credit are allowable only to the extent of the actual business use of the airplane in each of the years 1975 and 1976. In this connection, he argues that use of the plane for instrument flight training constituted personal, rather than business, use. Petitioner concedes that he is not entitled to the deductions and investment credit to the extent that he would have been had the plane been used 100 percent of the time for business purposes. He contends, however, that the ratio of business to personal use of the plane during 1975 does not represent the use that he intended to make of the plane when it was purchased and that, therefore, the percentage of business use for 1976 should be used in determining the amount of deductions and investment credit for 1975. As we understand the law, petitioner's *140 original intention with respect to the plane's use does not control the amount of the deductions or investment credit to which petitioner is entitled. Original intentions often change. [7]/ Section 162 allows a deduction for business expenses "paid or incurred during the taxable year." It is clear that the percentage of business use of the plane during 1976 has no relation to the amount of the expenses paid or incurred in operating the plane for business purposes during the taxable year 1975. Further, the allowance for depreciation is to be determined in accordance with the facts as they exist in the period for which a tax return is made. See Pasadena City Lines, Inc. v. Commissioner,23 T.C. 34, 39 (1954); cf. Roy H. Park Broadcasting, Inc. v. Commissioner,56 T.C. 784, 805, fn. 10 (1971); *141 Philadelphia Quartz Co. v. Commissioner,13 B.T.A. 1146 (1928). We think it clear that a similar rule must be applied with respect to the investment credit and the allowance for additional first-year depreciation, since computation of both of these items depends upon the extent to which a deduction for depreciation is allowable under section 167. See secs. 1.48-1(b)(2) and 1.179-1(a), Income Tax Regs. Accordingly, we hold that the investment credit and the deductions for annual depreciation, additional first-year depreciation, and operating expenses for the year 1975 must be computed with reference to the actual business use of the airplane during that year. Petitioner further contends that respondent erred by failing to include the hours that the plane was used for instrument flight training in computing the percentage of business use for 1975 and 1976. It is his position that operation of the plane for instrument flight training falls squarely within section 1.162-5(a)(1), Income Tax Regs., which permits a deduction for the expense of education *142 that maintains or improves skills required by an individual in his trade or business. Accordingly, petitioner asserts that flight training hours should at least be apportioned between the agreed business and personal use of the plane, as respondent did with respect to maintenance hours. [8]/ Respondent argues that: Training and proficiency flights are personal in nature, and the operating costs, investment credit, and depreciation attributable to them are not deductible. In support of this proposition, he cites Gibson Products Co., Inc. v. Commissioner,8 T.C. 654 (1947), and several Memorandum Opinions of this Court. [9]/ The holding in Gibson, however, was simply that a corporate taxpayer failed to show that the expense of training its president to fly, largely for his personal benefit, was a business expense of the corporation. In the other cases relied on by respondent, training and proficiency *143 flights were found to be personal in nature, but the general use of airplanes by the taxpayers in those cases was almost entirely personal and it does not appear that knowledge of flying was among the skills "required" in their respective businesses. [10]
The record in the instant case makes it clear that the expense of owning and operating the A-36 constitutes an "ordinary and necessary" expense of the petitioner's business, within the meaning of section 162. Petitioner's suppliers, and his customers to a somewhat lesser extent, are located throughout a very large geographic area. [11]/ It is particularly important to petitioner's business that he maintain a close working relationship *144 with his suppliers. He is, therefore, required to travel extensively in connection with his business. Petitioner aptly describes the plane as a business tool. Obviously, the expense of owning and operating the plane is "necessary" in the sense that it is "appropriate and helpful" to the development of petitioner's business. It is also "ordinary" in the sense that it is a "normal and natural response" to the specific conditions under which petitioner conducts his business. Commissioner v. Tellier,383 U.S. 687, 689 (1966); Welch v. Helvering,290 U.S. 111, 113 (1933); Graham v. Commissioner,35 T.C. 273, 278-279 (1960). Respondent does not argue otherwise. Since the expense of owning and operating the plane is an ordinary and necessary expense of petitioner's business under section 162, it follows that knowledge of flying is one of the skills "required" by petitioner in his business. Clearly, the instrument flight training maintained or improved that skill. During a substantial part of the year, weather conditions make instrument *145 flying essential for efficient use of the plane for petitioner's purposes. Of course, petitioner could have hired a pilot with an instrument rating, but there is nothing in the tax law that would require him to do so. On the record before us, we hold that the expense of operating the plane for instrument flight training is deductible as the expense of education that maintained or improved skills required by petitioner in his business and that all hours flown for this purpose must be included in computing the percentage of business use of the plane during each of the years 1975 and 1976. [12]/ To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. /↩ Subsequent to the years in issue, petitioner's market expanded to include some distributors in the mid-West and in Canada.
2. /↩ A pilot must have an instrument rating if he wishes to fly under certain conditions of poor visibility.
1. The figures shown for "personal" and "maintenance" in 1976 reflect a correction to the stipulation of facts that was made by the parties at trial.↩
3. /↩ In computing the investment credit and the deductions for annual depreciation and additional first-year depreciation, petitioner used the figure of $80,730 as the cost of the airplane, rather than its actual cost of $89,700. No explanation for this discrepancy appears in the record.
4. /↩ Respondent's computation of the percentage of business use of the airplane is based on the figures shown in the table, set forth in the above Findings, which gives a breakdown of the hours and purposes for which the plane was flown in 1975 and 1976. With respect to 1976, he computed that 100.2 hours flown for business purposes is equivalent to 53 percent of the total hours flown for all purposes during that year. He arrived at a final figure of 58 percent business usage by apportioning the hours designated as "maintenance" between the business and personal use of the airplane.
5. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted. 6. SEC. 179. ADDITIONAL FIRST-YEAR DEPRECIATION ALLOWANCE FOR SMALL BUSINESS. (a) General Rule.--In the case of section 179 property, the term "reasonable allowance" as used in section 167(a) may, at the election of the taxpayer, include an allowance, for the first taxable year for which a deduction is allowable under section 167 to the taxpayer with respect to such property, of 20 percent of the cost of such property. (b) Dollar Limitation.--If in any one taxable year the cost of section 179 property with respect to which the texpayer may elect an allowance under subsection (a) for such taxable year exceeds $10,000, then subsection (a) shall apply with respect to those items selected by the taxpayer, but only to the extent of an aggregate cost of $10,000. In the case of a husband and wife who file a joint return under section 6013 for the taxable year, the limitation under the preceding sentence shall be $20,000 in lieu of $10,000. (d) Definitions and Special Rules.-- (1) Section 179 property.--For purposes of this section, the term "section 179 property" means tangible personal property-- (A) of a character subject to the allowance for depreciation under section 167, (B) acquired by purchase after December 31, 1957, for use in a trade or business of for holding for production of income, and (C) with a useful life (determined at the time of such acquisition) of 6 years or more.↩
7. / See Gross v. Commissioner,T.C. Memo. 1972-221↩, where a taxpayer was denied depreciation, additional first-year depreciation, and the investment credit on an automobile purchased on Dec. 31, 1966, for both personal and business uses but not used for business purposes in the year of purchase.
8. / See footnote 4, supra. We note that if education is of the type described in sec. 1.162-5(a), Income Tax Regs.↩, then no allocation between the relative business and personal benefits of the education is necessary.
9. /Johnston v. Commisioner,T.C. Memo. 1976-20; Sherry v. Commissioner,T.C. Memo. 1975-337; Beckley v. Commissioner,T.C. Memo. 1975-37↩. 10. Compare Aaronson v. Commissioner,T.C. Memo. 1970-178 (expense of flying lessions held to be deductible by a news photographer); Shaw v. Commissioner, T.C. Memo. 1969-120↩ (expense of proficiency flights held to be deductible by a physician).
11. / Compare Harbor Medical Corp. v. Commissioner, T.C. Memo. 1979-291↩.
12. / In passing, we note that there is no evidence that the instrument flight training qualified petitioner for a new trade or business. See sec. 1.162-5(b)(3), Income Tax Regs.↩