FRANK S. BLAIR, III and CAROL S. BLAIR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blair v. Commissioner
Docket Nos. 4715-79, 10695-79.
United States Tax Court
T.C. Memo 1980-488; 1980 Tax Ct. Memo LEXIS 97; 41 T.C.M. (CCH) 289; T.C.M. (RIA) 80488; October 28, 1980, Filed James Francis Burke, Jr., for the petitioners. Kristine A. Roth, for the respondent. TANNENWARD MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $920 in petitioners' 1975 income tax and a deficiency of $2,100.90 in petitioners' 1976 income tax. After concessions by both parties, the issue to be decided is whether certain educational expenses (including tuition, books, and travel) are deductible under section 162[1] as ordinary and necessary business expenses. *98 FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners were married and resided in Hawthorne, New York, when they filed their petition in this case. They filed joint Federal tax returns for the years in question with the Internal Revenue Service Center, Cincinnati, Ohio. Since the expenses at issue are those of Carol S. Blair, she will hereafter be referred to as petitioner. Petitioner completed one year of college in 1958. Between 1958 and 1971, petitioner both raised a family and acquired approximately five and one-half years of work experience, mainly clerical and secretarial, with small companies. She obtained some familiarity with bookkeeping and payroll and had a minimum of personnel experience. Petitioner became a full-time student at Baldwin-Wallace College, and graduated from that institution in 1974 with a Bachelor of Arts in English. She was then hired as a personnel representative by Sherwin Williams Co., a company having large and widespread operations nationally and internationally (hereinafter "Sherwin Williams" or "employer") and worked in that capacity for more than one year. Petitioner was required *99 to make hiring recommendations, suggest personnel policy improvements, estimate the fair salary level for various jobs within the Sherwin Williams organization, and generally assist Sherwin Williams's employees concerning problems involving health and other employee benefits. There was no minimum educational qualification for a Sherwin Williams personnel representative. In December of 1975, petitioner was promoted to personnel manager. Petitioner's duties became primarily supervisory, and she received a substantial increase in pay. She continued to be concerned with and involved in the same area of problems of her employer although, as personnel manager, she made hiring decisions rather than recommendations and hired personnel representatives. Petitioner also became responsible for her department's budget. There were no minimum educational qualifications for a Sherwin Williams personnel manager. In January of 1975, petitioner began a two-year program of night instruction at Baldwin-Wallace College leading to the degree of Masters of Business Administration (M.B.A.), which she received in December 1976. Petitioner's course of study consisted of 12 eight-week courses, each meeting *100 on Tuesdays and Thursdays. Petitioner had no electives; all courses were specified by the Baldwin-Wallace M.B.A. program. In order to attend her classes, petitioner drove from her job at Sherwin Williams toBaldwin-Wallace College, a trip of approximately 15 miles, and then home, another 15 miles. Petitioner's courses during 1975 were: (1) Systems Management and Organizational Theory: an introductory business administration course familiarizing the students with the concept of a business system or organization. This course familiarized petitioner with the functioning of a large-scale business organization. [2] (2) Managing the Computer: an introductory computer course for users rather than for programmers. This course taught petitioner how to be more effective in acquiring information from, and communicating more effectively with, the computer personnel of her employer. (3) Information Management: a continuation of the previous course plus an introduction to information theory. This course enabled petitioner to obtain and evaluate information relevant to personnel problems. (4) Management Science and Probability Models: a statistics course. This course enabled petitioner *101 to compile various surveys required of a personnel representative. (5) Marketing Information Systems. [3] (6) Organizational Behavior: an introductory course on behavioral science management, including motivation and communication skills, elements important to the performance of duties of a personnel representative. Petitioner's courses during 1976 were: (1) Operations Analysis: a course emphasing the logistics of running a company. This course improved petitioner's ability to anticipate work flow and personnel needs. (2) Accounting and Finance Management: an introductory accounting course, which directly bore on petitioner's responsibility to prepare the budget for her department and her duties in respect of hiring accounting personnel. (3) Multi-national Corporations and International Trade: a course studying international companies. This course assisted petitioner in handling international employees of Sherwin Williams while they were on *102 home leave or assigned to duties at Sherwin Williams headquarters. (4) Managerial Economics: an introductory macro-economics course which, among other things, involved learning about labor statistics used in the personnel area. (5) Government, Management, and the Environment: a socio-ecological course which enabled petitioner to relate operations of her employer to the labor market, to Government, and to the community. (6) Management Policy and Systems Analysis: a summary and review of the preceding 2-years coursework. Petitioner's tuition expenses were reimbursed by Sherwin Williams, [4] although her other expenses were not. [5]
OPINION In resolving the issue before us, *103 we are required to measure petitioner's educational activities against three tests: (1) were those activities required to meet the minimum educational requirements of her employment; (2) did they qualify petitioner for a new trade or business, aside from any question as to whether they improved her skills in relation to her current employment; and (3) if they did not so qualify her, did they in fact improve her skills with respect to such current employment? See section 1.162-5, Income Tax Regs.
We have found as a fact that petitioner's employment had no minimum educational requirements and, indeed, respondent does not contend otherwise. Respondent contends that petitioner's graduate school studies "contributed" to qualifying her for a new trade or business. He seeks to support his position, at least as to the taxable year 1975, by suggesting that the position of personnel manager was a new trade or business insofar as petitioner was concerned. We think respondent misses the mark. Respondent's regulations provide -- In the case of an employee, a change of *104 duties does not constitute a new trade or business if the new duties involve the same general type of work as is involed in the individual's present employment. * * * See section 1.162-5(b)(3), Income Tax Regs. We think that, under any realistic interpretation, petitooner falls within the ambit of this regulation. There was a substantial overlap in petitioner's job tasks, the only major difference being that a Sherwin Williams personnel manager makes decisions while a personnel representative only makes recommendations. Neither that difference nor the acquisition of a new title is enough to constitute being a personnel representative and being a personnel manager as separate trades or businesses. See Glenn v. Commissioner,62 T.C. 270, 275 (1974). [6] We note in passing that even if "personnel manager" were in this situation a new trade or business, the educational expenses nonetheless would be deductible unless they qualified petitioner for such new trade or business. *105 Respondent further suggests that the new trade or business condition is met because petitioner's program of study partially satisfies Ohio's requirements for registration as a public accountant. See Ohio Rev. Code Ann. sec. 4701.07 (Page 1977). At the outset, we note that there was not the slightest suggestion of this line of attack until respondent's initial brief -- a practice which we do not favor, particularly where, as appears to be the case herein, such a contention would seem to require affording petitioner an opportunity to produce pertinent testimony. See Theatre Concessions, Inc. v. Commissioner,29 T.C. 754, 760 (1958). In any event, we think respondent goes too far. Ohio requires that a public accountant have an education "substantially the equivalent of an accounting concentration." Ohio Rev. Code Ann. sec. 4701.07(D) (Page 1977). Petitioner's studies at Baldwin-Wallace were far from that. Respondent's contention that petitioner's M.B.A. is "one step along the way" to qualifying her as a public accountant is simply too tenuous, in the context of this case, to merit consideration. Our perception would have been different if the factual background *106 herein were such that we could perceive an unfolding pattern of action by petitioner which would have qualified her as a public accountant. But, we do not believe an isolated venture into the educational world is enough to require the disallowance of an educational expense where such a pattern does not exist and the education undertaken clearly improves the taxpayer's skills in an existing trade or business. Finally, we reach the question whether petitioner's graduate studies improved her skills as a personnel representative and personnel manager. The question is one of fact and the burden of proof is on the petitioners. Schwartz v. Commissioner,69 T.C. 877, 889 (1978). Initially, we note that the fact that petitioner was reimbursed for her tuition expenses is not determinative, although it is relevant. [7]
There are a plethora of decided cases in this area. We see no need to delve into the wide variety of nuances with which the opinions *107 in such cases abound. Although petitioners' supporting evidence does not cross every "t" nor dot every "i," the record before us is sufficient to cause us to conclude that petitioners have carried their burden of proof. [8] We hold that petitioners are, with the exception attributable to the expenses relating to the course in Marketing Information Systems (which they concede are not deductible, see footnote 3, supra), entitled to the claimed deductions. As far as the travel expenses are concerned, respondent does not ask us to deal with these separately and disallow any portion thereof as commuting expenses. [9] We, therefore, hold that petitioners are entitled *108 to deduct their claimed travel expenses except with respect to one-sixth of the amount expended in 1975, attributable to the Marketing Information Systems course. See footnote 3, supra. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in question.↩
2. Petitioner wrote a paper for this course which eventually became the foundation of a Sherwin Williams performance appraisal report. ↩
3. Petitioners concede that they are not entitled to any deduction in respect of this course.↩
4. Petitioners reported the reimbursements as taxable income. Thus, to the extent that we hold the tuition to be deductible, there will be a wash. Respondent's position is that the tuition reimbursements are fully includible in income without an offsetting deduction. ↩
5. None of the amounts expended by petitioner for books, tuition, or travel are in dispute, respondent having conceded on brief the amount involved in the last category.↩
6. See Granger v. Commissioner,T.C. Memo. 1980-60, wherein we stated that "someone who progresses from a personnel assistant to an assistant personnel director and finally to the personnel director does not change his trade or business in any technical or practical sense." See also Beatty v. Commissioner,T.C. Memo. 1980-196↩.
7. McIlvoy v. Commissioner,T.C. Memo. 1979-248; Menas v. Commissioner,T.C. Memo. 1969-114↩.
8. We do not consider determinative the fact that petitioner was "frozen" into the courses included in the M.B.A. program and could not elect courses. This element might have been relevant if the standard to be applied was subjective (as it was under respondent's earlier regulations) rather than objective (as it is under his current regulations). See Carroll v. Commissioner,51 T.C. 213, 219 (1968), affd. 418 F.2d 91↩ (7th Cir. 1969), and the concurring opinion therein at pp. 219-220.
9. See Burton v. Commissioner,T.C. Memo. 1971-55; Boerner v. Commissioner,T.C. Memo. 1971-54↩.