T.C. Summary Opinion 2017-26

UNITED STATES TAX COURT

MEGAN ZHAO CREIGH AND JOHN L. CREIGH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 31504-15S.                    Filed April 27, 2017.

Megan Zhao Creigh and John L. Creigh, pro se.

Jeffrey L. Heinkel and Emerald G. Smith, for respondent.

SUMMARY OPINION

LEYDEN, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]All section references are to the Internal Revenue Code in effect for the

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated September 28, 2015, the Internal Revenue Service determined a deficiency in petitioners' 2012 Federal income tax of $17,992 and a section 6662(a) accuracy-related penalty of $3,598.40.  The issues for decision are whether petitioners:[2]  (1) can deduct $59,282 for tuition, fees, and associated education expenses for petitioner wife's executive master of business administration (E.M.B.A.) program; (2) can deduct $4,973 for car and truck expenses for petitioner wife's travel to the E.M.B.A. classes, programs, and events; and (3) are liable for an accuracy-related penalty of $3,598.40 under section 6662(a) and (b)(2).[3]

---

[1](...continued)
year at issue, unless otherwise indicated.

[2]John L. Creigh, petitioner husband, did not appear in Court, but the decision will be binding upon both spouses.

[3]At trial respondent conceded that petitioners were neither negligent nor disregarded rules or regulations under sec. 6662(a) and (b)(1).

## Background

Some of the facts are stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners resided in California when they timely filed their petition.

Petitioner wife has a bachelor of science degree in computer sciences from the University of Washington and a master of science degree in computer engineering from the California State University, Fullerton.  Before 1993 petitioner wife worked as a systems software engineer for a corporation where she was responsible for the design, development, and maintenance of software products.  From 1993 to 1997 petitioner wife worked as the head of information technology for another corporation.  In that role she developed and managed a computerized information system, created an information technology strategy, and managed corporate information technology operations.

Petitioner wife worked from 1997 to 2007 as a project manager for the consulting unit of another company.  In this position she used her skills as a software engineer to manage teams of consultants and professionals in designing and implementing the integration of business processes and computer software systems.  She traveled a significant amount of time to meet with clients.

In 2007 petitioner wife left that job to raise her child. She decided to go back to work in 2010 doing the same type of consulting work she had done for the consulting unit. She did not want to return to work for that same employer because the job involved too much traveling and she had a young child. Petitioner wife decided to launch her own independent consulting business to have greater control of her time and her work locations. In 2012, the year at issue, petitioner wife ran her independent consulting business as a sole proprietorship.

Beginning in 2010 petitioner wife tried to connect with businesses that needed the same type of work she had performed in her prior employment. During 2011 and 2012 petitioner wife applied for permanent work involving the design and implementation of business processes and computer software systems. Petitioner wife believed that if she got to an interview for a permanent position she would have the opportunity to discuss her independent consulting business in person with the employer. Petitioner wife also applied for contract work in the same field, connected with former colleagues, and attended local professional networking events. Despite her efforts, petitioner wife was unable to obtain any permanent job or consulting work in 2011 or 2012.

Through her networking efforts petitioner wife learned that management professionals working for the companies she sought as customers were attending

E.M.B.A. programs.  Petitioner wife believed that through an E.M.B.A. program she could network, build relationships with these management professionals, and eventually be introduced to her customers--customers who needed a consultant to design, develop, test, and implement computer software systems that improved business processes.

In September 2011 petitioner wife matriculated at the University of California, Los Angeles (UCLA) E.M.B.A. program, and she graduated in June 2013.  Petitioner wife traveled from her home to UCLA, a distance of about 70 miles, to attend E.M.B.A. classes and events.

Petitioner wife completed the following courses in the E.M.B.A. program: Leadership Foundations levels 1, 2, and 3; Data and Decisions; Marketing Strategy and Policy; Web Business; International Business Strategy; Economic Analysis for Managers; Managerial Accounting; Negotiations Analysis; Financial Policy for Managers; Economic Forecasting; Financial Modeling and Corporate Valuation for Entrepreneurs, Managers, and Dealmakers; Customer Information Strategy; Operations and Technology Management; Strategic Business Presenting; International Business Management; Managing Human Resources; Introduction to Management Research; Management Research; Business in Japan; Policy Analysis Seminar; and Competitive Strategy and Business Policy.  As part of the

E.M.B.A. program, petitioner wife worked on a project for a laboratory from December 2012 to June 2013, consulting on the feasibility of establishing an internal consulting division. The project required petitioner wife to determine how the quality systems division could provide individualized and quality control consulting services to its customers worldwide.

Petitioners filed a joint Federal income tax return for 2012. The Schedule C, Profit or Loss From Business, attached to the tax return identified petitioner wife's principal business or profession as "consultant".[4] During 2012 petitioner wife did not have any consulting clients[5] and did not report any gross receipts from consulting on the Schedule C. However, she claimed the following deductions: (1) $59,282 for the tuition, fees, and expenses associated with the E.M.B.A. program; (2) $4,973 for car and truck expenses for her travel from her

_____

[4]On the Schedule C petitioner wife entered "541990" as the principal business or professional activity code, which corresponds to "[a]ll other professional, scientific, & technical services" on the 2012 Instructions for Schedule C, at C-13.

[5]In 2013 petitioner wife obtained her first independent consulting contract as a project manager. Petitioner wife organized a subchapter S corporation, after the year at issue, through which she provided her consulting services. Her responsibilities under the contract consisted of computer software system implementation.

home to UCLA to attend the E.M.B.A. classes and events;[6] and (3) $449 for supplies. Petitioner wife reported a loss of $64,704 from her business on petitioners' 2012 tax return.

## Discussion

### I. Burden of Proof

A taxpayer bears the burden of proving he or she is entitled to any deduction claimed. See New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 440 (1934). If the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining his or her liability and satisfies other conditions, then the burden of proof shifts to the Commissioner. Sec. 7491(a). Petitioners have not argued that section 7491(a) applies nor established that its requirements are met. The burden of proof remains with petitioners.

### II. Education Expenses

Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business. Education expenses are deductible if they satisfy the general

---

[6]Petitioner wife reported 8,960 miles driven for business and 14,040 miles driven for other purposes on the Schedule C.

requirements under section 162 as well as the specific requirements under the regulations.

Under section 162 a taxpayer must be engaged in a trade or business in order for education expenses to be deductible. Link v. Commissioner, 90 T.C. 460, 463 (1988), aff'd, 869 F.2d 1491 (6th Cir. 1989); Schneider v. Commissioner, T.C. Memo. 1983-753, 1983 Tax Ct. Memo LEXIS 28, at *11-*12. The taxpayer may be engaged in a trade or business, although not otherwise employed, if he or she was previously involved in and actively sought to continue in that trade or business while pursuing a defined degree program related to his or her line of work. Furner v. Commissioner, 393 F.2d 292, 294 (7th Cir. 1968) (finding that a teacher continued to carry on her trade or business while simultaneously pursuing a graduate degree program and actively seeking employment in her line of work), rev'g 47 T.C. 165 (1966); see also Picknally v. Commissioner, T.C. Memo. 1977-321, 1977 Tax Ct. Memo LEXIS 120, at *7 (holding that a full-time doctoral degree student was carrying on a trade or business because it was customary for teachers to leave teaching positions temporarily to take courses, his coursework related to his previous employment, and he was not engaged in other unrelated employment while studying); Sherman v. Commissioner, T.C. Memo. 1977-301, 1977 Tax Ct. Memo LEXIS 138, at *7

(holding that the taxpayer who was engaged in business administration before and after graduation was carrying on a trade or business while pursuing an M.B.A. program full time).

Under the regulations, education expenses are deductible if the education maintains or improves skills required by the taxpayer in his or her employment or other trade or business or meets the express requirements of the taxpayer's employer. Sec. 1.162-5(a)(1) and (2), Income Tax Regs. Required skills in the taxpayer's employment are those skills that are appropriate or helpful in his or her employment or trade or business. See Knudtson v. Commissioner, T.C. Memo. 1980-455, 1980 Tax Ct. Memo LEXIS 130, at *15.

Even if the taxpayer is engaged in a trade or business and the education expenses may maintain or improve his or her skills, education expenses are not deductible if the expenses are for: (1) education required to meet the minimum requirements of the taxpayer's trade or business or (2) a program of study leading to the qualification of the taxpayer in a new trade or business. Sec. 1.162-5(b)(2) and (3), Income Tax Regs.

An individual who, through education, improves his or her skills in an existing trade or business may also become qualified for a new trade or business and cannot deduct the costs of that education. Thompson v. Commissioner, T.C.

Memo. 2007-174, 2007 Tax Ct. Memo LEXIS 177, at *4. "Educational expenses incurred to qualify for a new trade or business are nondeductible even if the individual does not engage in the new activity." Id.; see sec. 1.162-5(b)(3)(ii), Example (2), Income Tax Regs.

Petitioners argue that petitioner wife was carrying on a trade or business of management consulting in 2012 and that the E.M.B.A. program was necessary for her to network in order to obtain work as a management consultant in the industry in which she had previously worked.

Respondent contends that petitioner wife was not yet engaged in the trade or business of management consulting in 2012 or, in the alternative, that the E.M.B.A. program qualified her for a new trade or business.

The Court does not need to decide whether in 2012 petitioner wife was engaged in a trade or business or whether the education expenses were ordinary and necessary trade or business expenses because it concludes that the E.M.B.A. program qualified petitioner wife for a new trade or business. Therefore, the expenses for the E.M.B.A. program cannot be deducted for 2012. See sec. 1.162-5(b), Income Tax Regs.

An M.B.A. is a more general course of study that does not lead to a professional license or certification such as a law school degree. Allemeier v.

Commissioner, T.C. Memo. 2005-207, 2005 Tax Ct. Memo LEXIS 208, at *15-*16. However, if the E.M.B.A. program qualified petitioner wife to perform tasks and activities significantly different from those she had performed before the education, then it qualified her for a new trade or business. See Robinson v. Commissioner, 78 T.C. 550, 552 (1982); Thompson v. Commissioner, 2007 Tax Ct. Memo LEXIS 177, at *4. If the education merely refined petitioner wife's existing skills, then it did not qualify her for a new trade or business. See Robinson v. Commissioner, 78 T.C. at 557.

In evaluating whether the E.M.B.A. program qualified petitioner wife for a new trade or business, the Court uses a "commonsense approach" comparing the tasks and activities she was qualified to perform before she acquired the education at issue with those she was qualified to perform afterwards. See Davis v. Commissioner, 65 T.C. 1014, 1019 (1976); Glenn v. Commissioner, 62 T.C. 270, 275 (1974); Weiszmann v. Commissioner, 52 T.C.1106, 1110 (1969), aff'd, 443 F.2d 29 (9th Cir. 1971). The relevant inquiry is whether petitioner wife was objectively qualified to engage in a new trade or business. See Robinson v. Commissioner, 78 T.C. at 554-556; Glenn v. Commissioner, 62 T.C. at 275.

The E.M.B.A. program qualified petitioner wife to perform tasks that were significantly different from the tasks she had performed in her prior employment.

Petitioner wife testified that in her prior employment her tasks and skills centered on analyzing and designing computer software systems to improve or replace business processes to make them more efficient. Her projects also involved designing, developing, testing, and implementing computer software systems. Her education was in software engineering, which enabled her to understand how computer software systems worked and how to use or modify them to improve business processes. Petitioner wife testified that in her prior employment she was not involved in business strategy development or marketing. Her management skills were limited to managing people on a particular project.

Petitioner wife also testified that the courses she took in the E.M.B.A. program "did not really help in my area, in terms of project management." The E.M.B.A. program courses petitioner wife completed were varied and encompassed a large number of business fields: economics, management, finance, accounting, marketing, mergers and acquisitions, business policy, negotiations, valuation, and international business. Petitioner wife's skills in her prior employment, except for perhaps managing people on her projects, did not include skills related to any of the studied business fields.

Although her prior work as an employee involved some management skills-- e.g., managing people who worked on her projects--petitioner wife testified that

she did not engage in other business management tasks, such as strategy development or marketing, because she did not have the skill set to do so. Petitioner wife testified that she hoped to expand her consulting work into these other fields.

The Court has concluded in some cases that a taxpayer may deduct education expenses related to pursuing an M.B.A. degree. In those cases the M.B.A. program improved the taxpayer's ability to perform the same general duties he or she had already performed before enrolling in the M.B.A. program and did not qualify the taxpayer for a new trade or business. See Allemeier v. Commissioner, 2005 Tax Ct. Memo LEXIS 208, at *14-*15; Blair v. Commissioner, T.C. Memo. 1980-488, 1980 Tax Ct. Memo LEXIS 97, at *7-*8.

In Allemeier v. Commissioner, 2005 Tax Ct. Memo LEXIS 208, at *14-*15, the Court held that the taxpayer who pursued an M.B.A. did not significantly change his tasks and duties when his prior work involved designing marketing strategies for products, conducting informational seminars, or other management, marketing, and finance-related tasks directly related to the M.B.A. coursework. The M.B.A. program merely improved these preexisting skills the taxpayer used before enrolling in the M.B.A. program and did not qualify the taxpayer for a new trade or business. Id. at *16.

In Blair v. Commissioner, 1980 Tax Ct. Memo LEXIS 97, at *8, the Court likewise held that the taxpayer's M.B.A. program did not qualify her for a new trade or business because there was substantial overlap in the tasks she performed before and after the M.B.A. program. In her role as a personnel representative before the education, the taxpayer made hiring recommendations, suggested personnel policy improvements, estimated the fair salary level for various jobs within the company, and assisted employees with problems involving health and other employee benefits. Id. at *3. Although the taxpayer was promoted to personnel manager after starting the M.B.A. program, the Court found that her duties were consistent with her role as a personnel representative; and her new ability to make hiring decisions, as opposed to recommendations, and the change in her title were not enough for the Court to find her qualified for a new trade or business. Id. at *8.

In contrast, petitioner wife's tasks and duties in her prior employment, before enrolling in the E.M.B.A. program, were largely unrelated to her E.M.B.A. coursework. While petitioner wife may continue to be qualified to manage people as a project manager, she also became qualified to perform a myriad of business, management, finance, and marketing tasks she had not been qualified to perform before enrolling in the E.M.B.A. program.

Petitioner wife's work on a project for the quality systems division of a laboratory as part of the E.M.B.A. program demonstrates how the education qualified her to perform new tasks. For that project petitioner wife consulted on the feasibility of establishing an internal consulting division. Specifically, the project required petitioner wife to determine how the organization could provide individualized and quality control consulting services to its customers worldwide. These tasks were unrelated to petitioner wife's prior work in designing and developing computer software systems and integrating and implementing them to improve business processes. Accordingly, the Court concludes that petitioner wife's education expenses for tuition, fees, and associated expenses for 2012 are not deductible because the E.M.B.A. program qualified her for a new trade or business.

III.   Car and Truck Expenses

A taxpayer who travels away from home primarily to obtain education may deduct the relevant costs for travel, meals, and lodging while away from home provided the cost of the education is properly deductible under section 162. See sec. 1.162-5(e)(1), Income Tax Regs. The Court has concluded that the expenses of petitioner wife's E.M.B.A. program are not deductible under section 162. Therefore, petitioner wife's car and truck expenses for her travel to the E.M.B.A.

classes and events for 2012 are not deductible. See sec. 1.162-5(e)(1), Income Tax Regs.

IV.    Accuracy-Related Penalty

Respondent determined an accuracy-related penalty for 2012 for a substantial understatement of income tax under section 6662(a) and (b)(2). Under section 7491(c), the Commissioner bears the burden of production with regard to penalties. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). As explained below the Court concludes that respondent has met his burden of production with respect to a substantial understatement of income tax under section 6662(a) and (b)(2) for 2012.

Although respondent bears the burden of production with respect to the accuracy-related penalty, respondent "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions * * * [because petitioners bear] the burden of proof with regard to those issues." See Higbee v. Commissioner, 116 T.C. at 446.

A.    Substantial Understatement

Section 6662(a) and (b)(2) provides an accuracy-related penalty equal to 20% of the portion of an underpayment attributable to any substantial understatement of income tax. An "understatement" is defined as the excess of the

amount of the tax required to be shown on the tax return over the amount of tax that is shown on the tax return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A).

On their 2012 tax return petitioners reported a total tax due of $159,399. Respondent determined the amount of tax required to have been shown on petitioners' 2012 tax return was $177,391. Thus, the understatement of tax determined by respondent was $17,992. That amount exceeds $17,739.10, 10% of the tax required to be shown on the tax return, which is greater than $5,000. Therefore, respondent has met his burden of production under section 7491(c) to show that imposing the section 6662(a) and (b)(2) accuracy-related penalty is appropriate. The Court concludes that petitioners have substantially understated their income tax and are liable for an accuracy-related penalty under section 6662(a) and (b)(2) for 2012.

### B.  Reasonable Cause and Good Faith

A taxpayer is not liable for a penalty under section 6662(a), however, if the taxpayer establishes that he or she acted with reasonable cause and in good faith. Sec. 6664(c)(1). Circumstances that indicate reasonable cause and good faith are

the taxpayer's efforts to assess his or her proper tax liability, including reliance on the advice of a tax professional such as an accountant or an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.; see Higbee v. Commissioner, 116 T.C. at 448-449. Relevant facts and circumstances for the Court to consider include the experience, knowledge, and education of the taxpayer. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner wife had direct knowledge of the courses she took in the E.M.B.A. program and is college educated. Nevertheless, petitioners argue that they relied on their accountant when they claimed the education expense deductions for petitioner wife's business. Petitioner wife testified that "[the accountant] asked us to provide, send us the receipts, and all of that, * * * then he put it in the right category, and whatever the computation comes out, it's all based on his software. So I don't think that penalty on me is justified because I didn't do anything. * * * the professional accountant did the job for us."

For a taxpayer to rely reasonably on advice so as possibly to negate a section 6662(a) accuracy-related penalty, the taxpayer must prove: (1) the adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3)

the taxpayer actually relied in good faith on the adviser's judgment.  Neonatology

Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d

Cir. 2002).  Petitioners have failed to offer testimony or other evidence regarding

the qualifications of their accountant or the specific advice on which they relied.

Petitioners did not establish that they provided their accountant with accurate

information or that the incorrect tax return was the result of the accountant's error.

Petitioner wife's general statements that petitioners relied on their accountant are

not sufficient to prove reasonable cause and good faith for the disallowed

deductions.  Petitioners have failed to prove that they acted with reasonable cause

and in good faith and therefore are liable for an accuracy-related penalty for 2012.

The Court has considered all of the parties' arguments, and, to the extent not

addressed herein, the Court concludes that they are moot, irrelevant, or without

merit.

To reflect the foregoing,

Decision will be entered for

respondent.