T.C. Memo. 2005-207


UNITED STATES TAX COURT


DANIEL R. ALLEMEIER, JR., Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19320-03.              Filed August 31, 2005.


Daniel R. Allemeier, Jr., pro se.

Hans F. Famularo and Loren B. Mark, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, Judge:  Respondent determined a $4,872[1] deficiency

in petitioner's Federal income tax for 2001 and a $974 accuracy-

_____

[1]All monetary amounts have been rounded to the nearest
dollar.

related penalty.  After concessions,[2] the issues for decision are:

1.  Whether petitioner may deduct expenses incurred to earn a master's degree in business administration (MBA).  We hold that he may deduct education-related, but not parking, expenses.

2.  Whether petitioner substantiated $40 in tax preparation fees and $2,460.86 in non-educational unreimbursed employee business expenses.  We hold that he did not.

3.  Whether petitioner is liable for the section 6662[3] accuracy-related penalty for 2001.  We hold that he is not.

FINDINGS OF FACT

The parties have stipulated some facts.  The stipulation of facts and the accompanying exhibits are incorporated by this reference and are so found.  Petitioner resided in Pacific Grove, California, at the time he filed his petition.[4]

---

[2]Petitioner conceded $833.14 of $17,500 that he claimed as education "business expenses" on Form 2016-EZ, Unreimbursed Employee Business Expenses.  Petitioner also conceded a $1,174 State income tax refund that he did not report on his return for 2001.  Sec. 111.  Respondent conceded the balance of the State income tax refund determined in the 2001 deficiency notice.

[3]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[4]Petitioner has lived in Las Vegas, Nev., since August 2004. He telecommutes to work.

Petitioner has been a Selane Products, Inc.[5] (Selane Products) employee since 1996. Selane Products is an orthodontic and pediatric laboratory that specializes in making removable orthodontic appliances. It employed about 75 people at the time of trial and is located in Chatsworth, California.

When Selane Products hired petitioner, it needed salespeople with expertise to sell a newly manufactured mouth guard. Petitioner, with his educational background in sports medicine, was an ideal fit.

Initially, petitioner was hired part-time as a salesperson to sell a single product, a protective mouthguard. His job titles at the time were "Sports Medicine Consultant" and "Director of Intact Mouthguards." The following year, in 1997, petitioner graduated from Wingate University with a bachelor's degree in sports medicine and began to work for Selane Products full-time. Petitioner's responsibilities ranged from making sales calls by phone and managing small budgets to working directly with dentists and athletic trainers to educate them on the importance of properly fitted mouth guards.

---

[5]Selane Products is composed of four divisions. First, the Space Maintainers Laboratory fabricates custom dental appliances. Second, the Smile Foundation provides doctors educational and marketing opportunities. Third, Second Opinion provides diagnostic services. Fourth, Success Essentials supplies the dentistry products.

By all accounts, petitioner excelled in his duties at Selane Products, and in a few years he became a leading salesman for the company. Dr. Rob Veis (Dr. Veis), chief executive officer of Selane Products and petitioner's boss, testified that petitioner had "incredible potential," was a "quick learner," and had "excellent business skills." As a promising young employee, petitioner was rewarded with additional responsibilities.

While originally hired to sell a single product, petitioner's duties expanded to encompass other dentistry products and services of Selane Products. For instance, petitioner was tasked with designing marketing strategies to sell company products, organizing informational seminars, and traveling extensively to meet new staff, set up seminars, and promote Selane Products in talks he delivered at dentistry-related conventions.[6] Petitioner performed these duties before obtaining a graduate degree.

Petitioner decided to pursue an MBA about 3 years into his employment with Selane Products. Dr. Veis[7] told petitioner that pursuing the MBA would speed his advancement within the company and enhance his business skills. Selane Products, however, had a

---

[6]Selane Products did not reimburse petitioner for any of the expenses he incurred.

[7]In September 2004, Dr. Veis wrote a letter stating, in effect, that Selane Products had encouraged petitioner to pursue the MBA because it would increase his ability to continue with the company.

strict policy of not reimbursing employees for education costs or other business expenses.  Nor did Selane Products require petitioner to obtain the MBA.

Petitioner decided to pay for the MBA personally, and in 1999 he commenced studies at Pepperdine University.  He finished the degree in late 2001, the year at issue.  His MBA concentration was in business management, and his courses included accounting for managers, statistics, managerial finance, marketing management, quantitative methods, negotiation and conflict resolution, organizational theory and management, and business strategy.

Shortly after petitioner enrolled in, but before he completed, the MBA program, he was promoted to several new positions at Selane Products.  Petitioner was promoted to Marketing Manager, Managing Director of the Appliance Therapy Practitioners Association, Head of the SMILE Foundation, Practice Development Consultant, and Project Development Consultant.  In these new capacities, petitioner's duties expanded and included analyzing financial reports, designing action plans for sales, and evaluating the effectiveness of marketing campaigns.[8]

---

[8]An "employee profile" from Selane Products summarizes petitioner's work history as follows:  (1) From 1996-1997, petitioner worked in the marketing department in the position of "Intact Sales"; (2) from 1998-2000, petitioner worked in the marketing department in the position of "Sales/Marketing"; and (3) from 2000 through 2003, petitioner worked in the sales
(continued...)

Petitioner performed many of these same functions before he earned his MBA. Petitioner remained a full-time employee of Selane Products while in the MBA program.

Petitioner deducted his MBA-related expenses on his Schedule A, Itemized Deductions, on Form 2016-EZ, Unreimbursed Employee Business Expenses, which he timely filed along with his electronic Federal income tax return for 2001. Petitioner also incurred substantial business expenses traveling for Selane Products that he deducted on his Schedule A.

Specifically, petitioner deducted $17,500[9] of tuition expenses and $231 of parking fees associated with his education. In addition, petitioner deducted business-related expenses of $104 in vehicle expenses, $1,091 in travel expenses, and $113 in meal expenses. Petitioner also deducted $40 of tax preparation fees on his Schedule A.

Respondent disallowed petitioner's deductions and mailed him a deficiency notice on October 1, 2003. In the notice, respondent determined a $4,872 deficiency and $974 accuracy-related penalty under section 6662(a) for 2001. Petitioner filed a timely petition.

---

[8](...continued)
management department in the position of "Sales/Marketing."

[9]See infra note 15.

## OPINION

Respondent disallowed the claimed employee business expenses and determined that petitioner was liable for an accuracy-related penalty.  Petitioner asserts that he may deduct MBA-related expenses and other non-education business expenses, and that he is not liable for the penalty because he acted with reasonable cause and in good faith in taking the deductions.  We address each issue in turn.  We begin with the burden of proof.

A.   Burden of Proof

At trial, the Court found, and petitioner conceded, that petitioner failed to comply with reasonable requests by respondent for witnesses, information, documents, meetings, and interviews.[10]  See Snyder v. Commissioner, T.C. Memo. 2001-255 (citing H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).  Accordingly, section 7491(a) does not shift the burden of proof to respondent, and petitioner bears the burden to

---

[10]This burden may shift to the Commissioner to disprove entitlement to a claimed deduction if the taxpayer introduces "credible evidence" complete with the necessary substantiation and documentation sufficient to fulfill the sec. 7491(a) requirements.  See Snyder v. Commissioner, T.C. Memo. 2001-255 (citing H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).  We held at trial that petitioner did not meet his sec. 7491(a) obligations because he missed several meetings with respondent and failed to respond to several inquiries.

prove by a preponderance of the evidence that he qualified for the claimed deductions.[11]

B.   Whether Petitioner May Deduct His MBA Educational Expenses

We first determine whether petitioner's MBA-related expenses qualify as deductible business expenses.  A taxpayer may deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162(a). Educational expenses, specifically, are deductible if the education maintains or improves skills required by the individual in his or her employment or other trade or business or meets the express requirements of the individual's employer.  Sec. 1.162-5(a)(1) and (2), Income Tax Regs.

No deduction is allowed, however, if the taxpayer's expense is for education that enables him or her to meet the minimum educational requirements for qualification in his or her employment or if the education leads to qualifying the taxpayer for a new trade or business.  Sec. 1.162-5(b)(2) and (3), Income Tax Regs.

---

[11]The Commissioner's determinations in a deficiency notice are presumed correct, and the taxpayer bears the burden of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are generally a matter of legislative grace, and the taxpayer bears the burden of proving he or she is entitled to the claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Because the parties agree that the MBA improved petitioner's skills, we focus on whether the MBA met the minimum education requirement of Selane Products or qualified petitioner for a new trade or business. In other words, petitioner's MBA-related expenses are not deductible if the MBA was a condition precedent to his employment. Nor are the expenses deductible if the MBA qualified petitioner for a new trade or business, regardless of his intent to enter a new trade or business, and regardless of whether his duties significantly changed after he obtained the MBA. Robinson v. Commissioner, 78 T.C. 550, 556-557 (1982); Bodley v. Commissioner, 56 T.C. 1357, 1360 (1971); Jungreis v. Commissioner, 55 T.C. 581, 591 (1970); Schwerm v. Commissioner, T.C. Memo. 1986-16; sec. 1.162-5(b)(1), Income Tax Regs.

1.   Whether the MBA Met Minimum Education Requirements of Selane Products

Determining whether an employee meets the minimum education requirement typically means that an employee must have a particular degree before being hired or obtain the degree within a certain period after being hired. See sec. 1.162-5(b)(2)(iii), Examples (1), (2), and (3), Income Tax Regs. Here, respondent argues that Selane Products had a minimum education requirement, not for petitioner to begin employment but for petitioner to be promoted after he was hired, and that requirement was for petitioner to obtain an MBA. We disagree.

We first note that the parties both stipulated on the record that Selane Products did not expressly require that petitioner obtain an MBA to continue employment with Selane Products.[12] We must determine, therefore, whether Selane Products conditioned promotions, rather than employment generally, on petitioner beginning the MBA program.

Petitioner's boss at Selane Products strongly encouraged him to obtain the MBA. Petitioner's boss also speculated that petitioner might advance faster within Selane Products with the MBA. The record does not support respondent's contention, however, that petitioner's promotions were contingent on his beginning the MBA program. Encouraging petitioner to obtain the MBA and speculating that he might advance faster with the MBA is not tantamount to a requirement that petitioner obtain the MBA. Moreover, we decline to find that a minimum education requirement existed merely because petitioner's promotions happened to coincide with his enrollment in the MBA program.

We find no evidence in the record that petitioner was required to begin the MBA program to receive the promotions at issue. Nor do we discern that a requirement existed on the facts

---

[12]Inexplicably, while a letter in evidence emphatically states that "Daniel R. Allemeier, Jr. is in fact required to earn a graduate degree in order to maintain employment with Selane Products, Inc.," the parties stipulated: "An MBA did not meet an express requirement of Selane Products as a condition to petitioner's retention with Selane Products."

and circumstances, particularly where petitioner was promoted
<u>before</u> he completed the MBA program.  We hold therefore that
neither petitioner's enrollment in the MBA program nor his
completion of the program met a minimum education requirement of
Selane Products.  The more difficult question, rather, is whether
the MBA qualified petitioner for a new trade or business.

2.    <u>Whether the MBA Qualified Petitioner for a New Trade or Business</u>

We must next determine whether petitioner's MBA qualified
him to perform a trade or business that he was unqualified to
perform before he earned the MBA.  Whether an education qualifies
a taxpayer for a new trade or business depends upon the tasks and
activities he or she was qualified to perform before the
education and those that he or she was qualified to perform
afterwards.  See <u>Glenn v. Commissioner</u>, 62 T.C. 270, 275 (1974);
<u>Weiszmann v. Commissioner</u>, 52 T.C. 1106, 1110 (1969), affd. per
curiam 443 F.2d 29 (9th Cir. 1971).  The Court has repeatedly
disallowed education expenses where the education qualifies the
taxpayer to perform "significantly" different tasks and
activities.  <u>Browne v. Commissioner</u>, 73 T.C. 723, 726 (1980)
(citing <u>Diaz v. Commissioner</u>, 70 T.C. 1067, 1074 (1978), affd.
without published opinion 607 F.2d 995 (2d Cir. 1979)); <u>Glenn v.
Commissioner</u>, <u>supra</u>.  The relevant inquiry is whether the
taxpayer is objectively qualified in a new trade or business.
See <u>Robinson v. Commissioner</u>, 78 T.C. 550, 554-556 (1982); <u>Glenn</u>

v. Commissioner, supra; Weiler v. Commissioner, 54 T.C. 398, 401-402 (1970); sec. 1.162-5, Income Tax Regs.

Respondent claims that petitioner's evolving duties and promotions after he enrolled in the MBA program demonstrate that petitioner was qualified for and indeed entered a new trade or business at Selane Products once he began the MBA program. Respondent argues that petitioner's trade or business before the MBA was principally sales related and involved only limited managerial and financial duties, but that once petitioner began the MBA program he advanced to numerous other jobs and was given advanced managerial, marketing, and financial duties, all of which were "significantly" different from the duties he performed before enrolling. In sum, respondent argues that the MBA qualified petitioner for the specific new trade or business of "advanced marketing and finance management."

Petitioner disagrees and argues that the MBA enhanced and maintained skills he already used in his job, but did not qualify him for a new trade or business or for any particular promotions. Petitioner argues that the MBA merely capitalized on his abilities that he had before beginning the program, giving him a better understanding of financials, costs analyses, marketing, and advertising. After careful consideration, we agree with petitioner.

Petitioner was hired by Selane Products for his experience in sports medicine, and he was hired, at first, to sell a sports-related product. Petitioner excelled in his duties and was rewarded with increased responsibility, including management, marketing, and finance-related tasks. The record establishes that he performed these myriad tasks before he enrolled in the MBA program. Once he enrolled, but before he finished the MBA program, he was promoted to new positions involving more complex tasks, but still involving the same marketing, finance, and management duties.

Simply acquiring new titles or abilities does not necessarily constitute the entry into a new trade or business. See Glenn v. Commissioner, supra. The "commonsense approach", rather, requires that a comparison be made between the types of activities that the taxpayer was qualified to perform before acquiring a particular title or degree with those that he or she was qualified to perform afterwards. Reisinger v. Commissioner, 71 T.C. 568, 574 (1979); Davis v. Commissioner, 65 T.C. 1014, 1019 (1976); Glenn v. Commissioner, supra; Weiszmann v. Commissioner, supra at 1109. If the activities are significantly different, then the educational expenses are disallowable. Glenn v. Commissioner, supra. This is an objective test. Diaz v. Commissioner, 70 T.C. 1067, 1073 (1978); Taubman v. Commissioner, 60 T.C. 814, 817 (1973); see sec. 1.162-5, Income Tax Regs.

Petitioner's business after enrolling in the MBA program did not significantly change. After completing the MBA program, petitioner established with testimony that his business involved the same general activities that he performed before enrolling in the program, activities involving sales, marketing, and management. While petitioner was awarded with new positions and titles after he enrolled in the program and while the MBA may have sped his advancement within Selane Products, the basic nature of his duties did not significantly change. The MBA rather improved preexisting skills that petitioner used before enrolling in the MBA program.

We also distinguish our facts from cases involving taxpayers embarking on a course of study that qualified them for a professional certification or license. Courts considering those factors have often found that the education expenses were not deductible, even where the taxpayer performed many of the same activities before the education. For instance, the Court denied taxpayers' deduction for law school expenses on four occasions because law was a field of study that led the taxpayers to qualify for the new trade or business of being an attorney. See Bodley v. Commissioner, 56 T.C. 1357 (1971); Weiler v. Commissioner, supra; Weiszmann v. Commissioner, supra at 1110-1111; Galligan v. Commissioner, T.C. Memo. 2002-150, affd. 61

Fed. Appx. 314 (8th Cir. 2003).[13]  Petitioner's MBA was not a course of study leading him to qualify for a professional certification or license.

We find two cases particularly instructive.  On one occasion, our Court considered whether an MBA degree qualified a taxpayer for a new trade or business.  See Blair v. Commissioner, T.C. Memo. 1980-488.  In that case, the taxpayer was employed as a personnel manager while taking courses toward an MBA.  We found that the taxpayer was entitled to deduct tuition expenses because the courses improved the taxpayer's job skills and did not qualify the taxpayer for a new trade or business.[14]  Id.

---

[13]Courts have found similarly where the course of study led taxpayers to qualify for professional certifications.  For instance, the Court has found that a licensed public accountant is in a different trade or business from a certified public accountant.  See Glenn v. Commissioner, 62 T.C. 270, 275 (1974). The Court has also found that a pharmacist intern is in a different trade or business from a registered pharmacist, even where they each perform many of the same tasks and activities. See Antzoulatos v. Commissioner, T.C. Memo. 1975-327.

[14]We denied deductions for MBA expenses in two other cases on the basis that the taxpayer had not already been established in a trade or business.  See Link v. Commissioner, 90 T.C. 460, 463-464 (1988), affd. 869 F.2d 1491 (6th Cir. 1989); Schneider v. Commissioner, T.C. Memo. 1983-753; cf. Sherman v. Commissioner, T.C. Memo. 1977-301.  This is distinguishable from our case where petitioner had worked for Selane Products prior to and throughout the MBA program.  In addition, our facts are distinguishable from a case in which we denied MBA expense deductions where the taxpayer's duties were technical before enrolling in the MBA program and managerial afterwards.  See McIlvoy v. Commissioner, T.C. Memo. 1979-248; see also Hudgens v. Commissioner, T.C. Memo. 1997-33 (managing assets in a trust company differs significantly from researching tax issues and preparing tax returns for an
(continued...)

Similarly, in another case before our Court, we held that a taxpayer was allowed to deduct the educational expenses associated with a master of science degree in administration where the studies provided the taxpayer with a broad general background in management and business administration, activities that were already components of the taxpayer's work activities. See Beatty v. Commissioner, T.C. Memo. 1980-196.  As in Blair and Beatty, petitioner's MBA courses provided him with a general background to perform tasks and activities that he had performed previously at Selane Products.

We also decline to find as an objective matter that the MBA qualified petitioner in a "new" trade or business, where petitioner had substantial work experience directly related to his MBA coursework.  See Robinson v. Commissioner, 78 T.C. 550, 554-556 (1982); Glenn v. Commissioner, supra at 275; Weiler v. Commissioner, 54 T.C. 398, 401-402 (1970); sec. 1.162-5, Income Tax Regs.  The MBA qualified petitioner to perform the same general duties he performed before enrolling in the MBA program.

Accordingly, we find that petitioner's MBA did not meet a minimum education requirement of Selane Products.  Nor do we find that the MBA qualified petitioner to perform a new trade or

---

[14](...continued)
accounting firm).

business.  Petitioner therefore may deduct the amount of MBA

tuition expenses that he substantiated.[15]

C.    Whether Petitioner Adequately Substantiated Tax Preparation
      Fees and Unreimbursed Employee Business Expenses

We next address whether petitioner may deduct non-education

expenses and tax preparation fees.  Taxpayers do not have an

inherent right to take deductions.  Deductions are a matter of

legislative grace, and taxpayers must establish their right to

take them.  Deputy v. du Pont, 308 U.S. 488, 493 (1940); New

Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Taxpayers must substantiate any deductions and bear the burden of

substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 89-90

(1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

In addition to the substantiation requirements for ordinary

and necessary business expenses, taxpayers are subject to more

stringent substantiation requirements for certain expenses.  See

secs. 162(a), 274(d).  For instance, taxpayers must strictly

substantiate the nature and amount of the meal, travel, and

vehicle expenses.  See sec. 274(d).  For these expenses, a

taxpayer must maintain adequate records or produce sufficient

evidence to corroborate his or her statements to substantiate the

---

[15]Our finding pertains only to $15,745 in tuition-related expenses and not $231 in parking fees petitioner associates with his education, which he failed to substantiate.  Petitioner originally deducted $17,500 in tuition expenses, which respondent later reduced to $15,745, without objection.

amount, time and place, and business purpose of the expense, as well as the business relationship to the taxpayer of the persons involved in the claimed expenses. Id. (flush language). Adequate records require the taxpayer to maintain a diary, a log, or a similar record, and documentary evidence that, in combination, are sufficient to establish each element of each expenditure or use. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). A record must generally be written contemporaneously with the expenditure. Sec. 1.274-5T(c)(2)(ii)(A), Temporary Income Tax Regs., supra. Against this background, we now analyze whether petitioner satisfied substantiation requirements for his claimed deductions.

Overall, petitioner claimed $17,500 in business expenses of which he conceded $833. Of the remaining $16,667, $15,745 was attributable to the tuition expenses that petitioner substantiated, for which we granted a deduction. The remaining amounts are $922 in miscellaneous business expenses, $40 in tax preparation fees, $104 in vehicle expenses, $1,091 in travel expenses, and $113 in meal expenses.

Petitioner contends that he lost records supporting expense deductions for the tax preparation fees and miscellaneous business expenses. He has failed to reconstruct adequately those records or otherwise corroborate those items. These expenses are

therefore unsubstantiated and disallowed.[16]  See secs. 162(a), 212(1); Hradesky v. Commissioner, supra at 89-90.

As for the meal, travel, and vehicle expenses that require strict substantiation, respondent contends that petitioner failed to substantiate strictly $1,091 in travel expenses and $113 in meal expenses.  Respondent argues that while petitioner documented his payment of some of the amounts charged, he substantiated neither the "business purpose" of the expenses nor the "business relationship" to him of any persons entertained. We agree that petitioner has not strictly substantiated these expenses.

Petitioner frequently traveled on business and incurred meal and travel expenses, which his employer did not reimburse.[17]  Yet petitioner substantiated only the time and amount of certain of these expenses, and of those amounts he did not adequately establish the business relationship between the expenses and his business for Selane Products.  See sec. 274(d) (flush language).

Petitioner substantiated certain expenses with credit card receipts and a personal calendar.  While some of those expenses coincided with business functions, petitioner did not explain the

---

[16]Petitioner gave us no basis to apply the Cohan rule to estimate his expenses.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

[17]Petitioner incurred the vehicle expenses for travel between two Selane Products buildings.

business relationship between the charges and the trade or business of Selane Products.[18]  For example, petitioner's credit card statement listed a charge for "Tavern on the Green" on November 29, which coincided with a calendar notation for "greater New York Dental Meeting."  We do not know with whom petitioner dined, whether the dinner had a business purpose, or the nature of the relationship, if any, between the person entertained and petitioner's work for Selane Products.  Petitioner's credit card statement also listed a charge for "Monterey Plaza Hotel" on October 29, which coincided with a calendar notation for "Monterey Meeting."  We are left to speculate as to the nature and business purpose of the Monterey Plaza charge.

For these charges, petitioner was subject to stricter substantiation requirements than for his general business expenses.  We find that petitioner has failed to satisfy those requirements.  Accordingly, we sustain respondent's determinations regarding petitioner's unreimbursed business expenses.

---

[18]Credit card receipts reflect that petitioner paid $671.87, $231.40, and $100.50 for a hotel, rental car, and airline fare, which coincided with a business convention.  Petitioner similarly substantiated that he paid $130.33 and $116.66 in restaurant charges during another business convention.

D.   Whether Petitioner Is Liable for Accuracy-Related Penalties Under Section 6662(a)

Respondent determined that petitioner is liable for an accuracy-related penalty under section 6662(a) with respect to the underpayment attributable to petitioner's claimed business expenses.  We disagree.

Respondent has the burden of production under section 7491(c) and must come forward with sufficient evidence that it is appropriate to impose the penalty.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment, however, if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, that portion.  Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs.  The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability and the knowledge and experience of the taxpayer.  Sec. 1.6664-4(b)(1), Income Tax Regs.

We do not find petitioner liable for a penalty on the underpayment attributable to the business expenses.  Petitioner prevailed on the tuition expenses he substantiated.  As for the remaining expenses, petitioner established at trial that he incurred substantial business expenses for which he was not reimbursed.  Were it not for a loss of records in moves

petitioner made in the years leading up to trial, we believe that petitioner could have substantiated many of the deductions. Moreover, petitioner contemporaneously recorded the time and amount of several business expenses.  Though the records were insufficient to meet the strict substantiation requirements, we find that he acted with reasonable cause and in good faith in taking the deductions.  Secs. 162(a), 274(d).  Accordingly, we decline to impose a penalty upon petitioner.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.  To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered under Rule 155</u>.